C.D. Michel – Calif. S.B.N. 144258
Joshua Robert Dale – Calif. S.B.N. 209942
cmichel@michellawyers.com
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
cmichel@michellawyers.com
jdale@michellawyers.com

Attorneys for Plaintiff
Michael Roberts

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ROBERTS,<br><br>          Plaintiff,<br><br>     v.<br><br>MARK MATSUDA, in his official capacity as Chief of the City of Torrance Police Department; JOHN J. NEU; DOUGLAS HATH; JOEY WATANABE; CITY OF TORRANCE POLICE DEPARTMENT; and DOES 1-50,<br><br>          Defendants. | **CASE NO. 2:14-cv-3723**<br><br>**COMPLAINT FOR:**<br><br>**(1)   VIOLATION OF FEDERAL CIVIL RIGHTS UNDER COLOR OF LAW (42 U.S.C. §1983)**<br><br>    **(a)   VIOLATION OF FOURTH AMENDMENT;**<br><br>    **(b)   VIOLATION OF FIFTH AMENDMENT;**<br><br>    **(c)   VIOLATION OF FOURTEENTH AMENDMENT;**<br><br>**(2)   STATE LAW TORTS OF CONVERSION & TRESPASS TO CHATTELS; AND**<br><br>**(3)   INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

/ / /

/ / /

/ / /

/ / /

## INTRODUCTION AND SUMMARY OF THE CASE

1.    Plaintiff brings this action to seek relief regarding the unlawful seizure and destruction of his firearms by the City of Torrance Police Department and its employees and agents, such destruction resulting from: 1) the execution of an illegal policy and procedure promulgated by former Chief John J. Neu and Torrance Police Department denying the return of firearms to owners after those firearms have been voluntarily surrendered to the Department, and 2) the willful and malicious failure of the Department's employees to follow a lawful and well-established policy of the Department prior to destroying Plaintiff's firearms.

2.    In this instance, the Department destroyed Plaintiff's firearms after it was unambiguously ordered by a California Superior Court to return them to Plaintiff.  The Department ostensibly refused to return the firearms because they unlawfully sought to compel Plaintiff to register his firearms with the California Department of Justice as a condition of their return.  The Department had no legal authority to condition the return of Plaintiff's property to him on the registration of that property.

3.    The Department has a policy and practice of refusing to return firearms to their lawful owners, and in many instances, of unlawfully requiring such owners to register those firearms as a condition of their return.  In this instance, because Plaintiff refused to capitulate to the Department's illegal policies, and seemingly vindicated his rights by obtaining a court order for their return, the Department intentionally and with malice punished Plaintiff and violated his rights by destroying his property.

4.    California law restricts a law enforcement agency from disposing of firearms for 180 days after the agency notifies the owner that the firearms are available for return.  See CAL. PENAL CODE §33875.  The Department also has a policy and practice of destroying firearms in their possession only after providing 180 days advance notice to their owners of the intent to destroy such firearms, and

further, only where such owner has not responded to such advance notice by informing the Department that the owner desires to maintain ownership of such firearms, and is not abandoning them.  In this instance, the Department destroyed Plaintiff's firearms in violation of California law and its own policies by not giving such notice to Plaintiff *and* by destroying such firearms where the Department was already on ample notice that Plaintiff desired to maintain ownership of the firearms.  Plaintiff made this abundantly clear to the Department insomuch as he had taken multiple overt steps over the course of *years* to gain the return of such firearms, including the notable step of hiring counsel and getting a court order against the Department in an attempt to secure the firearms' return.

5.     As a result of the Department's seizure, conversion, and destruction of Plaintiff's property, Plaintiff suffered actual monetary loss in the form of the value of the firearms now that they are destroyed as well as the value of their use during the time they were seized prior to their destruction.

## JURISDICTION AND VENUE

6.     Jurisdiction of this action is founded on 28 U.S.C. §1331, in that this action arises under the Constitution and laws of the United states, and under 28 U.S.C. §1343 and 42 U.S.C. §§1983 and 1988, insomuch as it seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United states Constitution and by Acts of Congress. The Court has supplemental jurisdiction over Plaintiff's state law claims asserted herein under 28 U.S.C. §1367 because such claims arise out of the same case or controversy as the federal claims.

7.     Plaintiff's claim for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201 and 2202.

8.     Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims

occurred in this district.

**PARTIES**

9.      Plaintiff Michael Roberts is a citizen of the United States and a resident of Torrance, Los Angeles County, California.

10.     Defendant Mark Matsuda is an employee of Defendant City of Torrance Police Department, and currently holds the title of "Police Chief."  He is one of the ultimate policy makers, if not the ultimate policy maker for City of Torrance Police Department.  Matsuda has direct control over promulgating, enforcing, and continuing the policies of his predecessors, including the unlawful polices and procedures of City of Torrance Police Department previously utilized by other Defendants as complained of herein. Matsuda is sued solely in his official capacity as current Chief of City of Torrance Police Department, and monetary damages are not sought from him individually.

11.     Defendant John J. Neu is a former employee of Defendant City of Torrance Police Department, and previously held the title of "Police Chief."  He was one of the ultimate policy makers, if not the ultimate policy maker for City of Torrance Police Department, including during the time that the polices and procedures promulgated and executed by him and by other Defendants as described below resulted in the seizure and surreptitious destruction of Plaintiff's property. On information and belief, Neu was the primary architect and champion of the policies and procedures complained of herein.

12.     Defendant City of Torrance Police Department ("TPD") is a Law Enforcement Agency, and a subdivision of the City of Torrance, itself a Charter City located within Los Angeles County, California.

13.     Defendant Douglas Hath is a Detective with Defendant TPD. Pursuant to TPD's unlawful policies, he ordered the continued seizure of Plaintiff's firearms after TPD no longer had cause to keep them.  Without notice to Plaintiff, he then ordered the destruction of Plaintiff's firearms in TPD's possession.

**4**
**COMPLAINT**

14.     Defendant Joey Watanabe is an employee of Defendant TPD with the title of "Officer."  Pursuant to TPD's unlawful policies, and on orders from Defendant Hath, Watanabe unlawfully refused to return Plaintiff's firearms to him, and then destroyed them.

### FACTS

15.     Plaintiff had a temporary restraining order ("TRO") sought out and issued against him by his physician as a result of an argument he engaged in with staff at that physician's office.  On February 26, 2010, Plaintiff complied with California Code of Civil Procedure §527.9 by voluntarily relinquishing his 21 firearms to TPD for the duration of the TRO. The TRO was resolved amicably between the parties.

16.     Pursuant to facts alleged in the TRO, the Los Angeles District Attorney's Office filed a criminal case against Plaintiff. Plaintiff pleaded no contest to an infraction for disturbing the peace with loud and unreasonable noise. Plaintiff then sought to recover his surrendered firearms, and completed the necessary series of Law Enforcement Gun Release ("LEGR") applications required under California Penal Code §§26590, & 33850-33895, in order to regain possession of his firearms from TPD.

17.     The California Department of Justice ("DOJ") promptly processed Plaintiff's LEGR applications and found him "eligible to possess . . . firearm[s]," and so informed TPD.  DOJ further found that none of the 21 firearms in TPD's possession had been used in a crime, were stolen, or otherwise should not be returned to Plaintiff.  Despite DOJ's repeated findings that Plaintiff was eligible to regain possession of his firearms, and the firearms were eligible to be returned, TPD denied Plaintiff's repeated requests to pick up his property.  TPD initially justified its refusal to return the property on the erroneous and legally unsupportable grounds that three handguns of the 21 firearms at issue were not recorded in DOJ's Automated Firearms System ("AFS").

18.     There is no requirement under federal or California law that lawfully-owned handguns that were purchased prior to the implementation of the AFS be retroactively recorded within the AFS. There is no requirement that any long gun purchased prior to January 1, 2014 be recorded within the AFS.[1] See, e.g., CAL. PENAL CODE, §§11106 (2013), 28160 & 28165.  Additionally, California Evidence Code §637 creates a presumption that a thing possessed by a person is owned by him.  Thus, because Plaintiff voluntarily surrendered his firearms to TPD, and no information was discovered during the LEGR process to dispute Plaintiff's ownership, the mere fact of Plaintiff's prior undisputed physical possession of those firearms created a legal presumption of Plaintiff's ownership that TPD was obligated to abide by in further handling the return of the firearms to Plaintiff. TPD ignored this presumption, however.

19.     Between May 22, 2010 and March 22, 2012, Plaintiff was repeatedly requested by TPD to submit additional LEGR applications to DOJ as a condition of return of his firearms. In response, Plaintiff submitted three sets of LEGR applications to DOJ.  All three submissions resulted in the same reply by DOJ that Plaintiff was eligible to possess the firearms and that Plaintiff's firearms were not reported stolen and had not been involved in crimes.  Despite these repeated affirmations from DOJ, TPD still refused to return the firearms.  LEGR responses are only valid for 30 days after issuance, and each time after Plaintiff submitted a LEGR application, and TPD unlawfully refused to return the firearms, the LEGR response would then expire.

---

[1] State and federal law, depending on the firearm, currently require and have previously required that highly-regulated firearms like "assault weapons," .50 BMG rifles, machine guns, short barreled shotguns/rifles, and "destructive devices" be registered.  None of the firearms previously owned by Plaintiff fall into any of these categories of unusual weapons such that they had to be previously registered.

20.     As a result of TPD's unlawful refusal to return the firearms, Plaintiff then sought an order from a California Superior Court for return of the firearms. On March 22, 2014, a Los Angeles County Superior Court judge issued an order that the "Torrance Police Department . . . follow orders and/or directives of the Department of Justice regarding the return to [Plaintiff] of any firearms."  Because DOJ had previously approved the return of the firearms via its responses to Plaintiff's LEGR applications, this should have been sufficient to compel TPD to return Plaintiff's property.

**B.     The May 9, 2012 Court Order to Return all Firearms**

21.     But following the Superior Court's March 22, 2012 order, TPD still would not release the firearms, and directed Plaintiff to file yet another LEGR application.

22.     Plaintiff filed <u>a fourth LEGR application</u> on April 24, 2012 for the release of firearms held by TPD.  DOJ processed Plaintiff's latest application and once again verified that he was eligible to possess the firearms, and that they were not stolen, the instruments of a crime, etc.  Despite the Court's order of March 22, 2012, and DOJ's repeated determinations that Plaintiff was eligible to regain possession of his firearms, TPD nonetheless maintained that Plaintiff's firearms – both handguns and long guns – that were not recorded in the AFS would not be released to him.

23.     Accordingly, Plaintiff sought another court order for return of his firearms.  On May 9, 2012, the Superior Court issued a second order to TPD, this one expressly directing that "[t]he Torrance Police Department shall return to Michael Lee Roberts all firearms in their possession pursuant to California Penal Code Section 33850 et seq."

**C.     TPD Ignored the May 9, 2012 Court Order**

24.     Despite the Superior Court's second and unequivocal instruction that TPD return Plaintiff's firearms, on June 12, 2012, after more than two years of

1   cajoling, TPD released just four handguns out of Plaintiffs' 21 firearms in TPD's

2   possession.  In unabashed defiance of a court order, TPD continued to withhold 17

3   of Roberts' firearms – both handguns and long guns – based on the unlawful claim

4   that those 17 firearms had to be recorded by Plaintiff in the AFS before they would

5   be returned.

6         **D.   TPD Then Destroyed the Firearms**

7       25.   On April 18, 2013, after stymying for nearly three years Plaintiffs'

8   efforts to regain his property, including blatantly disregarding a valid and

9   unambiguous court order that the property be returned, TPD unilaterally destroyed

10  the remaining 17 firearms.  It did not give any notice to Plaintiff that it was going

11  to destroy the firearms.

12      26.   Defendant Watanabe scheduled the destruction of Plaintiff's firearms

13  after receiving written authorization from Defendant Hath.  Although TPD,

14  specifically Hath, had received and was aware of both the March 22, 2012 and May

15  9, 2012 orders from the court, Watanabe and Hath ignored those orders.

16      27.   On information and belief, Hath and TPD ignored the May 9th court

17  order and destroyed the firearms to send "a message" to Plaintiff about his attempts

18  to regain his lawful property while resisting TPD's and its employees' repeated

19  attempt to impose TPD's unlawful registration policy on Plaintiff as a condition of

20  such return.

21      28.   Because TPD surreptitiously destroyed the firearms, without

22  informing either the Superior Court that had issued the return orders or Plaintiff,

23  Plaintiff was reasonably unaware that such firearms had been destroyed until

24  sometime after April 18, 2013.  Plaintiff had to retain counsel to advise him on

25  how to force TPD to return his firearms, and it was only after Plaintiff's counsel

26  contacted TPD in Summer 2013, that TPD revealed, and Plaintiff first learned, that

27  TPD had destroyed the firearms.

28  / / /

29.     TPD unlawfully seized and then destroyed the following 17 firearms:

Star Bonifacio Echeverria 9mm pistol;

Ballester-Rigaud .45 cal. pistol;

Smith & Wesson Model 1955 .45 cal. pistol;

Remington Model 870 Wingmaster shotgun -12 ga.;

Winchester Model 370 shotgun - 12 ga.;

Stevens Model 311 Double Barrel shotgun;

Emil Kerner u. Sohn Dbl. Barrel shotgun - 16 ga.;

Snider-Enfield Shotgun - Egyptian Guard;

Remington Model 11 Shotgun - 12 ga.;

Savage Brit. Enfield No. 4 Mk I shotgun;

Marlin 1894 Cowboy Ltd. Rifle - .357 cal.;

U.S. M1 Carbine rifle - .30 cal.;

Spanish Destroyer Carbine (C.I.A.) - 9 mm;

Chinese SKS Factory 0138 - 7.62x39 mm;

Marlin Model 1895 rifle - .45-70 cal.;

Interarms Whitworth Express rifle - .458 cal.;

Stevens Savage Arms 94 shotgun - 12 ga.

The total value of the destroyed property is $15,800.

30.     Plaintiff timely presented a claim for reimbursement to TPD pursuant to California Government Code section 910, et seq.  TPD thereafter rejected the claim.  Within the limitations period thereafter applicable to the state law claims identified below, Plaintiff has brought this suit.

### FIRST CLAIM FOR RELIEF:

### Violation of Civil Rights Under Color Of Law (42 U.S.C. §1983)

31.     Plaintiff fully reincorporates Paragraphs 1-30, supra, as though fully alleged hereinafter.

32.     As set forth hereinabove, and for all times relevant to this litigation,

**9**
**COMPLAINT**

TPD, Matsuda, Neu, and DOES 26-50 have adopted a policy, and implemented and communicated that policy to subordinates, including Matsuda, Neu, Hath, and DOES 1 through 25, that in instances where TPD takes possession of an individual's firearms, including through seizure or by voluntary surrender, TPD will give 180 days notice to the owner of such firearms before it will destroy such firearms in its possession.  TPD, Matsuda, Neu, and DOES 26 through 50, appurtenant to this adopted policy, have adopted a further policy that TPD will not destroy the firearms if, within 180 days after giving the owner of firearms notice of the intended destruction, the owner contacts TPD to inform TPD that the owner has not abandoned the firearms and wishes to regain possession from TPD, or wishes to transfer the firearms to another owner.  These adopted policies are lawful in that they are consistent with California law regarding the obligations of Law Enforcement Agencies when those agencies have seized or otherwise possess a citizen's firearms.

33.    As set forth hereinabove, and for all times relevant to this litigation, TPD, Matsuda, Neu, and DOES 26-50 have adopted a policy, and implemented and communicated that policy to subordinates, that in instances where TPD has possession of an owner's firearms, and the owner is eligible to retake possession of such firearms because the owner is no longer suffering a legal infirmity that would prevent the owner from possessing firearms, TPD requires the owner to submit a LEGR application to DOJ as a condition of the return of such firearms.  This policy, in and of itself, is also lawful in that it is consistent with California law regarding the obligations of Law Enforcement Agencies when those agencies are returning a citizen's firearms.

34.    Appurtenant to the above policy about the return of firearms, TPD, Matsuda, Neu, and DOES 26 through 50 have further adopted a policy that TPD will not return firearms to their owner unless such owner can provide proof of ownership in the form of written title or a purchase receipt.  Alternatively, the

adopted policy, in the absence of the owner furnishing a written title or purchase receipt, allow a firearm owner to redeem firearms without furnishing title or a purchase receipt, but only if the owner "voluntarily registers" the firearm in DOJ's AFS.  Such registration is not required under California law, and this policy of TPD withholding possession of firearms in order to force an owner to register those firearms is patently illegal.

35.    TPD, Matsuda, Neu, and DOES 26 through 50 have adopted a policy, and implemented and communicated that policy to subordinates, that in order for TPD to return personal property of citizens *other than firearms*, no proof of ownership is required to be furnished where ownership is not actively disputed by a third party.  Thus, with computers, personal electronics, furniture, and other personal property *other than firearms* seized by TPD from citizens, the fact of possession by the citizen at the time of seizure is sufficient enough to establish ownership under TPD's policy and justify the property's return to its owner if and when the property is eligible to be returned. This policy is lawful, in that it is consistent with California law, as well as with the general customs of the public regarding the ownership and transfer of non-titled personal property.

36.    Like the personal property described above, the overwhelming majority of firearms in circulation in California are not registered, are not required by law to be registered, and do not otherwise have a written title that follows them from owner to owner.

37.    As a fundamental issue, only firearms that were/are required as a matter of law to be registered within the AFS are considered "titled."  Unlike recorded deeds for houses, or pink slips for automobiles, there are no other title documents in existence for firearms other than their registration in the AFS. Handguns have, since the 1910s, been required in California to be registered to their purchaser, *but only when the handgun was transferred from a licensed*

*firearm dealer to a purchaser.*[2]

38.    For decades, private individuals could and did transfer handguns amongst themselves without having to use a firearm dealer or having register with DOJ the transferred handgun.  The requirement that individuals transferring firearms amongst themselves complete that transfer through a licensed dealer or register those firearms in the AFS, is a rather recent requirement for both handguns and long guns.

39.    As to handguns, prior to 1990, individuals could transfer handguns freely to one-another without the use of a dealer.  And as described above, as long as the transfer wasn't being made through a dealer, it didn't have to be registered in the AFS.

40.    Transfers of handguns among immediate family members (parents to children, husbands to wives, testate transfers) occurred without the use of a dealer and without generating any paperwork, such as registration in the AFS, up through 1994.  Thus, e.g.,the Colt M1911 pistol made in 1938 and used by a grandfather in World War II would have been passed to his son, and then later onto his grandson, without any paperwork being generated or registrations having occurred.  No title would have followed such transfers.  Similarly, the snub-nose .38 revolver a father bought in the 1960s for self-defense would have been passed to his son or daughter without any paperwork or registration.  Again, until 1994, no title would have existed to identify the transfer or confirm the subsequent ownership by the son or daughter.  Like a parent giving a piece of furniture to a child, a transfer would have occurred, and the child would own the furniture, but there would been no record of the transfer, and there would be no title following that furniture around that the

---

[2]  Prior to the implementation of the AFS – a networked, electronic registration system –  DOJ kept paper or computer registration records on file for those handguns that were required to be registered, i.e., those bought or transferred from a licensed dealer.

child could use to prove his or her ownership if ever pressed on the issue.

41.    After 1994 and through the present, family members could and can still transfer handguns without using a dealer, but paperwork will be generated in the form of an AFS registration.  After 1994, family recipients of transfers have been required to register those handguns with DOJ immediately after the intrafamilial transfer.

42.    Unlike handguns, for which only dealer sales have been registered since 1910, and for which other types of transfers have only been registered since the 1990s, there has been no registration requirement for long guns until this year. Thus, for the millions of shotguns, rifles, and other long guns sold or transferred in California at any time prior to 2014, there is not going to be any registration information for that firearm in the AFS.[3]  The new requirement that long guns be registered in the AFS when they are transferred took effect on January 1, 2014. Prior to this year, information concerning long gun transactions was, in fact, expressly forbidden to be kept by DOJ.  See CAL. PENAL CODE §11106 (2013).

43.    Firearms are a durable good, and are in use for decades, and in some rare instances, centuries.  Thus, in addition to the existence of title for firearms being rare, on information and belief, the overwhelming majority of Californians who own or possess firearms do not currently have in their possession, and may have never possessed, a purchase receipt evidencing when they acquired such firearms.  Even in the instance of recently-manufactured firearms – like with computers, personal electronics, furniture, and other personal property – the purchase receipts for these firearms may have been discarded at the time of the purchase, filed away somewhere the location of which has been long forgotten by the owner, or such receipts may have never been generated for the sale in the first

---

[3]  The one exception is where an owner, prior to 2014, *voluntarily* registered a long gun with DOJ, an extremely rare occurrence.

place.  For transfers of older firearms, where the transfer did not require a dealer, the likelihood of a receipt being generated in the first instance is very low.  Where the transfer was, like the examples above, an intrafamilial transfer – from grandfather, to son, then to grandson, or from father to child – obviously there would have never been a receipt for such transfer or transfers.

44.    As a matter of law, as well as popular custom, citizens simply have no need to keep and safeguard such receipts, i.e., except for TPD's implementation of its unlawful proof of ownership policy for firearms, in no other instance do the incidents of firearms use or ownership in California require an owner to possess the original purchase receipt or present it to an official authority.

45.    In Plaintiff's instance, many of the firearms destroyed by TPD were acquired by him decades ago, well-before the implementation of the AFS or even mandatory background checks.  Like most California firearms owners, if purchase receipts were generated for the purchases of his firearms that took place years or even decades ago, Plaintiff has no idea where those purchase receipts currently are, and cannot reasonably locate or reproduce them, nor does the law expect him to be able to do so.

46.    And like with computers, personal electronics, furniture, and other personal property, where firearms were not purchased new from a retailer, but were instead purchased used from a previous owner, in many instances, no purchase receipt would have been generated during that transaction.  As but one example of this, until 2014, Curio & Relic long guns were transferred between owners in California without a background check, without use of a dealer, and in a manner that did not reasonably require the generation of a purchase receipt.

47.    Several of Plaintiff's destroyed firearms were considered Curios & Relic long guns, and he acquired, most, if not all of them, from sellers who were private collectors, not retail stores like Big 5 Sporting Goods or Turner's Outdoorsman.  Thus, under state and federal law applicable at the time Plaintiff

purchased these Curios & Relics, such transfer did not require a background check or use of a dealer.  Upon receipt of payment from Plaintiff, the seller simply gave the Curio & Relic to Plaintiff, sans receipt.  And as noted above, up until 2014, this practice was legal in California.

48.     Despite the fact that 1) California law recognizes that possession creates a rebuttable presumption of ownership in non-titled property, 2) California law does not require registration of firearms by owners as a condition of their return by Law Enforcement Agencies, 3) TPD itself has policies recognizing the right of return of non-titled personal property to its owners without title or proof of purchase being presented, and 4) the custom and practice in California is that most owners of firearms will not have title or a purchase receipt for their firearms to present to a Law Enforcement Agency, nonetheless TPD has implemented its illegal policy requiring proof of ownership via title or purchase receipt, or alternatively, registration, as a condition of the return of lawfully-owned firearms to owners whose ownership is not in dispute.

49.     As a result of TPD's unlawful policy, Plaintiff lost the use of his firearms for a period of 37 months.  Thereafter, he lost the use and possession of them permanently when they were maliciously destroyed.

**Violation of Fourth Amendment**

50.     The Fourth Amendment of the United States Constitution provides in part that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

51.     The Plaintiff seeks a remedy against Defendants TPD, Matsuda, Neu, Hath, Watanabe, and DOES 1 through 50 for the wrongful seizure of Plaintiff's personal property.  Although Plaintiff voluntarily surrendered the firearms to TPD, when Plaintiff became eligible as a matter of law to possess the firearms again, and Plaintiff made demand for their return following the first LEGR response and was unlawfully denied by TPD, such voluntary surrender ripened or transmuted into an

unlawful seizure.  Alternatively, although Plaintiff voluntarily surrendered the firearms to TPD, when Plaintiff became eligible as a matter of law to possess the firearms again, and a California Superior Court ordered them returned but TPD violated that order, such voluntary surrender ripened or transmuted into an unlawful seizure.

52.     On information and belief, the execution of the unlawful policy that resulted in the seizure of Plaintiff's firearms was done with the intent and knowledge that such policy violated established law.  Such intent and knowledge is inferred from, inter alia, the receipt by TPD, Matsuda, Neu, DOES 26 through 50, and policy makers of other California Law Enforcement Agencies, prior to the seizure of Plaintiff's firearms, of an opinion letter by the California Attorney General which acknowledges and instructs Law Enforcement Agencies that owners of some handguns and almost all long guns will lack proof of ownership in the form of title, a purchase receipt, or by such firearm being registered in the AFS. Notwithstanding actual or constructive receipt of the Attorney General's opinion letter on this issue, TPD, Neu, and DOES 26 through 50, implemented the unlawful policy.  Matsuda continues to promulgate that policy.

53.     On information and belief, the execution of the unlawful policy that resulted in the seizure of Plaintiff's firearms was done with the intent and knowledge that such policy violated established law.  Such intent and knowledge is inferred from, inter alia, the receipt by TPD, Hath, Watanabe, and DOES 1 through 25 of the court order ordering the return of Plaintiff's firearms.  Notwithstanding actual or constructive receipt of the court order, TPD, Hath, Watanabe, and DOES 1 through 25 seized the firearms up through the period where they were destroyed.

**Violation of Fifth Amendment**

54.     Plaintiff fully reincorporates Paragraphs 1-53, supra, as though fully alleged hereinafter.

55.     The Fifth Amendment to the United States Constitution provides:

"...nor shall private property be taken for public use, without just compensation."

56.     Plaintiff seeks a remedy against Defendants TPD, Matsuda, Neu, Hath, Watanabe, and DOES 1 through 50 for the continued retention and ultimate destruction of Plaintiff's personal property, which amounts to a *de facto* taking without just compensation in violation of Plaintiff's Fifth Amendment rights, as applied to the States through the Fourteenth Amendment due process clause.

57.     On information and belief, the execution of the unlawful policy that resulted in the taking of Plaintiff's firearms was done with the intent and knowledge that such policy violated established law.  Such intent and knowledge is inferred from, inter alia, the receipt by TPD, Hath, Watanabe, and DOES 1 through 25, of the court order ordering the return of Plaintiff's firearms.  Notwithstanding actual or constructive receipt of the court order, TPD, Hath, Watanabe, and DOES 1 through 25 first denied Plaintiff the use of the firearms for a substantial period of time, and then ultimately permanently denied Plaintiff their use by destroying them.

**Violation of Fourteenth Amendment**

58.     Plaintiff fully reincorporates Paragraphs 1-57, supra, as though fully alleged hereinafter.

59.     The Fourteenth Amendment to the United States Constitution provides in part that: "... nor shall any State deprive any person of ... property, without due process of law."

60.     Plaintiff seeks a remedy against Defendants TPD, Matsuda, Neu, Hath, Watanabe, and DOES 1 through 50 for the continued retention of Plaintiff's personal property, after Plaintiff availed himself of the administrative processes required by law, which retention thereafter is a deprivation of property without due process in violation of the Fourteenth Amendment.

61.     On information and belief, the execution of the unlawful policy that resulted in the deprivation of Plaintiff's firearms without due process was done

**17**
**COMPLAINT**

with the intent and knowledge that such policy violated established law.  Such intent and knowledge is inferred from, inter alia, the receipt by Hath, Watanabe, and DOES 1 through 25 of the court order ordering the return of Plaintiff's firearms.  Such intent and knowledge is further inferred from, inter alia, the actual knowledge by Hath, Watanabe, and DOES 1 through 25 of TPD's other adopted firearms policy requiring notice to the owner and an opportunity to redeem seized property.  The proper execution of such other TPD policy mandated that Hath, Watanabe, and DOES 1 through 25 not destroy Plaintiff's firearms.  Notwithstanding actual notice of TPD's policy, Hath, Watanabe, and DOES 1 through 25 destroyed Plaintiff's firearms without further notice or warning to Plaintiff, without regard to the court order for their return to Plaintiff, and without regard to the ongoing efforts Plaintiff had made to redeem the firearms, of which efforts they were fully aware.  All of these circumstances not only constituted a denial of due process to Plaintiff, but directly contravened state law and TPD's express policy for destruction of firearms.

62.   On information and belief, the execution of the unlawful policy that resulted in the deprivation of Plaintiff's firearms without due process was done with the intent and knowledge that such policy violated established law.  Such intent and knowledge is inferred from, inter alia, the receipt by TPD, Hath, Watanabe, and DOES 1 through 25 of the court order ordering the return of Plaintiff's firearms.  Notwithstanding actual or constructive receipt of the court order, TPD, Hath, Watanabe, and DOES 1 through 25 destroyed the firearms without further notice or process being afforded to Plaintiff, and without TPD, Hath, Watanabe, DOES 1 through 25, or any of them, seeking to vacate the court order.

/ / /

/ / /

/ / /

**SECOND CLAIM FOR RELIEF:**

**State Law Torts of Conversion and Trespass to Chattels**

63.    Plaintiff fully reincorporates Paragraphs 1-62, supra, as though fully alleged hereinafter.

64.    At no time did Defendants, or any of them, have an ownership interest in Plaintiff's firearms.  Defendant TPD had a possessory interest in the firearms from the time Plaintiff surrendered the firearms under California Code of Civil Procedure §527.9 to TPD up through the time DOJ cleared the firearms' return to Plaintiff in DOJ's 2010 response to the first LEGR application made to it.

65.    Plaintiff seeks a remedy against Defendants TPD, Matsuda, Neu, Hath, Watanabe, and DOES 1 through 50 for the continued exercise of control and possession over Plaintiff's personal property, and then the destruction of such property.  The period during which Plaintiff's firearms were held by TPD without a possessory interest and Plaintiff was denied their use constitutes a trespass to Plaintiff's chattels under California law.  The destruction of Plaintiff's property constitutes a conversion of Plaintiff's personal property under California law.

**THIRD CLAIM FOR RELIEF:**

**Injunctive Relief (28 U.S.C. §§2201 & 2202)**

66.    Plaintiff fully reincorporates Paragraphs 1-65, supra, as though fully alleged hereinafter.

67.    Plaintiff seeks injunctive relief against Defendants TPD, Matsuda, Hath, Watanabe, and DOES 1 through 50, pursuant to 28 U.S.C. §§2201 and 2202, to enjoin Defendants from further promulgating and executing the unlawful policy of TPD with regard to the refusal to return firearms to lawful owners.

**PRAYER**

WHEREFORE Plaintiff prays for relief as follows:

68.    For declaratory and injunctive relief that all Defendants except Neu must cease using TPD's current policy regarding refusing to return firearms to

lawful owners where such owners lack proof of title, a purchase receipt, and have not registered and are unwilling to register such firearms in the AFS;

69.   For declaratory and injunctive relief that all Defendants except Neu instruct their employees and subordinates to return firearms in TPD's possession to lawful and eligible owners in a manner that complies with state law;

70.   For declaratory and injunctive relief that all Defendants except Neu apply correct and well-established legal principles for determining ownership and possession of firearms by law-abiding citizens, including but not limited to the presumptions in California Evidence Code §637 with respect to long guns and handguns owned prior to the creation of the AFS;

71.   For monetary damages, including punitive damages, as permitted under state and federal law, from Defendants, except from Matsuda;

72.   For remedies available pursuant to 42 U.S.C. §1983 and for an award of reasonable attorney's fees, costs, and expenses pursuant to 28 U.S.C. §2412, 42 U.S.C. §1988, California Code of Civil Procedure §1021.5, and any other applicable state or federal law;

73.   For an award of reasonable attorney's fees, costs, and expenses pursuant to California Penal Code §33885, which provides that: "In a proceeding for the return of a firearm seized and not returned pursuant to this chapter, where the defendant or cross-defendant is a law enforcement agency, the court shall award reasonable attorney's fees to the prevailing party; and

74.   For such other and further relief as may be just and proper.

Date: May 14, 2014                    **MICHEL & ASSOCIATES, P.C.**

                                      /s/ C.D. Michel

                                      C.D. Michel
                                      E-mail:cmichel@michellawyers.com
                                      Attorneys for Plaintiff
                                      Michael Roberts

/ / /

1

## DEMAND FOR JURY TRIAL

2          Plaintiff hereby demands a trial by a jury of his peers.

3   Date: May 14, 2014                    **MICHEL & ASSOCIATES, P.C.**

4                                          /s/ C.D. Michel

5                                          C.D. Michel
                                           E-mail:cmichel@michellawyers.com
6                                          Attorneys for Plaintiff
                                           Michael Roberts
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**